UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SIMMONS FIRST NATIONAL BANK,

        Plaintiff,

    v.

RICHARD C. LEHMAN, *et al.*,

        Defendants.

_____/

No. C-13-02876 DMR

**ORDER ON PARTIES' MOTIONS FOR SUMMARY JUDGMENT [DOCKET NOS. 77, 86]**

    Plaintiff Simmons First National Bank ("Simmons") brings this action for judicial foreclosure against real property owned by Defendants Richard C. Lehman and Michele D. Koo. Both parties now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Docket No. 77 (Defs.' Mot.), 86 (Pl.'s Mot.).] Simmons also moves to supplement the evidence submitted in opposition to Defendants' motion for summary judgment. [Docket No. 105.] Having carefully considered the parties' arguments, the relevant legal authority, and having had the benefit of oral argument, the court hereby denies Defendants' motion for summary judgment and grants Simmons's motion for summary judgment. The court also grants in part Simmons's motion to supplement the evidence.

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. Facts & Background[1]

This dispute concerns a February 4, 2009 deed of trust ("the Deed of Trust") recorded against Defendants' residential property in Woodside, California ("the Woodside property"). The Deed of Trust secured a $3 million loan to Bonhomme Investment Partners, LLC ("Bonhomme") made by Excel Bank ("Excel"). (Renner Decl., Jan. 13, 2015, ¶ 7, Ex. 5 (Deed of Trust).) At the time Excel made the loan, Defendant Lehman and third party Donald Davis were the sole owners of Bonhomme. Lehman is married to Koo. Excel failed in October 2012 and the Federal Deposit Insurance Corporation ("FDIC") took control of Excel's assets as a receiver. Simmons acquired certain of Excel's assets through a Purchase and Assumption Agreement between Simmons and the FDIC, including the Bonhomme loan and the Deed of Trust. (Renner Decl. ¶ 10, Ex. 7.)

The circumstances of the Bonhomme loan are as follows: in early 2009, Davis, Bonhomme's then-manager, asked Excel for a loan for Bonhomme to use as a line of credit. On February 6, 2009, Bonhomme delivered to Excel five documents in connection with the loan ("the Loan Documents"):

• a promissory note for the amount of $3,000,000 with a maturity date of February 6, 2010, executed by Davis and Lehman on behalf of Bonhomme ("the Note"). The Note provides that it is secured by a deed of trust dated February 6, 2009 "covering 60 Prospect St, Woodside, CA, 94062," the Woodside property. (Renner Decl. ¶ 3, Ex. 1 (Note).)

• a personal guaranty executed by Lehman securing Bonhomme's debts, liabilities and obligations regarding the $3,000,000 ("the Guaranty"). The Guaranty provides that it is "secured by a mortgage or security agreement dated 02/06/2009." (Renner Decl. ¶ 4, Ex. 2 (Guaranty).)

---

[1] The court grants Simmons's requests for judicial notice in support of its motion for summary judgment (Docket No. 87) and opposition to Defendants' motion for summary judgment (Docket No. 97), as well as Defendants' requests for judicial notice in support of their opposition to Simmons's motion for summary judgment (Docket No. 101) and reply (Docket No. 104). The documents attached thereto include court filings from related proceedings in Missouri. These filings have a direct relation to the matters at issue and are properly judicially noticed. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). They also include true and correct copies of official public records of the San Mateo County Recorder's Office, and their authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b).

United States District Court

For the Northern District of California

- an agreement executed by Davis and Lehman on behalf of Bonhomme extending a line of credit in the amount of $3,000,000 by Excel ("the Line of Credit agreement"). The Line of Credit agreement states that "I have signed the following documents in connection with this line of credit and note(s) entered into in accordance with this line of credit . . . mortgage dated FEBRUARY 06, 2009 . . . guaranty dated FEBRUARY 06, 2009." (Renner Decl. ¶ 5, Ex. 3 (Line of Credit agreement).)

- a third party pledge agreement granting Excel a security interest in the Woodside property on behalf of Bonhomme, executed by Lehman and purporting to contain Koo's signature. (Renner Decl. ¶ 6, Ex. 4 (Third Party Pledge).)

- a notarized "Long Form Deed of Trust and Assignment of Rents" dated February 4, 2009 and recorded on February 17, 2009 against the Woodside property, providing that it was for the purpose of securing the Note. (Deed of Trust.) The document was executed by Lehman and purports to contain Koo's signature and initials. The Deed of Trust was notarized by Richard C. Fellhauer, a notary public in Missouri.

Bonhomme failed to pay the outstanding principal, interest, and charges on the Note at maturity, and Simmons now seeks to foreclose on the Deed of Trust.

Defendants do not dispute any of the facts set forth above. Koo denies having signed the Third Party Pledge or the Deed of Trust, asserting that her signatures on those documents were forged. She does not identify anyone whom she contends is responsible for the forgery.

## II. Procedural History

On May 22, 2013, Simmons filed a state court complaint against Defendants for judicial foreclosure, specific performance, and injunctive relief. Defendants removed the case to federal court on June 21, 2013. In July 2013, Defendants answered and asserted affirmative defenses, including that they were induced to enter into the loan transactions by oral representations made by Shaun Hayes, a shareholder of Excel's holding company. [Docket Nos. 12 (Koo Answer) ¶ 28, 15 (Lehman Answer) ¶ 28.] They also asserted that "[n]either Defendant Lehman nor Defendant Koo executed the Trust Deed before the notary public who purported to notarize the Trust Deed," and that the Deed of Trust was fraudulent at its inception. (Koo Answer ¶ 41; Lehman Answer ¶ 41.)

1    On January 8, 2015, the court granted Simmons leave to file an amended complaint.  [Docket

2    No. 91.]  On January 9, 2015,  Simmons filed an amended complaint, again alleging claims for 1)

3    judicial foreclosure; 2) specific performance; and 3) injunctive relief.  It also alleged alternative

4    bases for enforcing the Deed of Trust, including, *inter alia*, estoppel.  [Docket No. 92 (Am.

5    Compl.).]  Defendants answered on January 22, 2015, bringing counterclaims for 1) slander and

6    disparagement of title; 2) quiet title; and 3) declaratory judgment. [Docket Nos. 98 (Koo Answer to

7    Am. Compl.), 99 (Lehman Answer to Am. Compl.).]

8    Defendants move for summary judgment.  Simmons moves for partial summary judgment on

9    Defendants' fraud-based affirmative defenses.

10    **III. Legal Standard**

11    A court shall grant summary judgment "if . . . there is no genuine dispute as to any material

12    fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden of

13    establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex*

14    *Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light

15    most favorable to the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted).

16    A genuine factual issue exists if, taking into account the burdens of production and proof that would

17    be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could

18    return a verdict in that party's favor.  *Anderson v. Libby Lobby, Inc.*, 477 U.S. 242, 248.  The court

19    may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact.  *See id.* at

20    249.

21    To defeat summary judgment once the moving party has met its burden, the nonmoving party

22    may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit

23    or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine

24    issue of material fact exists.  *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630

25    (9th Cir. 1987) (citations omitted).  In other words, there must exist more than "a scintilla of

26    evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory

27    assertions will not suffice.  *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.

28    1979).  Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

1  contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that

2  version of the facts" when ruling on the motion.  *Scott*, 550 U.S. at 380.

3      Where, as here, the parties have filed cross-motions for summary judgment, "[e]ach motion

4  must be considered on its own merits."  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside*

5  *Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).  "In fulfilling its duty to review each cross-motion

6  separately, the court must review the evidence submitted in support of each cross-motion."  *Id.*

7  **IV. Discussion**

8  **A.      Defendants' Motion**

9      Defendants move for summary judgment on the grounds that there are no genuine issues of

10  material fact as to whether Koo executed the Deed of Trust or authorized anyone to sign the Deed of

11  Trust on her behalf.  Defendants submit a declaration by Koo in which she states "I did not sign the

12  [Deed of Trust], and I did not place any initials on the CA Deed of Trust.  I did not authorize anyone

13  to sign my name on the CA Deed of Trust, and I did not authorize anyone to place my initials on the

14  CA Deed of Trust.  I am not aware who signed my name on the CA Deed of Trust, or who placed

15  my initials on the CA Deed of Trust."  (Koo Decl., Nov. 5, 2014, ¶ 2.)  She also states that she has

16  never met Fellhauer, the notary public who notarized the Deed of Trust.  (Koo Decl. ¶ 3.)  Koo also

17  testified at deposition in July 2014 that she had never seen the Deed of Trust before her deposition,

18  had never discussed the Deed of Trust with Lehman, and that Lehman had never told her that the

19  Deed of Trust had been recorded against the Woodside property.  (Koo Dep. 100-101.)  Defendants

20  also submit a declaration by Lehman, in which he states that he did not sign or initial Koo's name on

21  the Deed of Trust, nor authorize anyone to sign or initial her name on the Deed of Trust.  (Lehman

22  Decl., Nov. 6, 2014, ¶ 2.)[2]  According to Defendants, based on their unequivocal testimony

23  regarding the Deed of Trust, there is no dispute of fact as to whether Koo executed the document

24  and they are entitled to judgment as a matter of law.  In response, Simmons presents evidence that it

25  contends create a triable fact as to whether 1) Koo signed the Deed of Trust; 2) Lehman was

26

27  _____

28      [2] Lehman does not deny having executed the Loan Documents himself.

United States District Court

For the Northern District of California

1  authorized to sign Koo's name on the Deed of Trust; and 3) Koo is estopped from denying that she

2  signed the Deed of Trust.

3     Pursuant to California Evidence Code section 1451:

4     A certificate of the acknowledgment of a writing other than a will, or a certificate of
      the proof of such a writing, is prima facie evidence of the facts recited in the
5     certificate and the genuineness of the signature of each person by whom the writing
      purports to have been signed if the certificate meets the requirements of Article 3 . .
6     . .

7  Cal. Evid. Code § 1451[3]; *see also* Mo. Rev. Stat. § 490.410 ("[e]very instrument in writing,

8  conveying or affecting real estate, which shall be acknowledged or proved, and certified as herein

9  prescribed, may, together with the certificates of acknowledgment or proof, and relinquishment, be

10 read in evidence, without further proof.").  Further, California Evidence Code section 602 provides

11 that "[a] statute providing that a fact or group of facts is prima facie evidence of another fact

12 establishes a rebuttable presumption."  This presumption extends to deeds of trust.  *See Hernandez*

13 *v. Madrigal*, No. 2:09-cv-00413-MCE-GGH, 2010 WL 1493506, at *3 (E.D. Cal. Apr. 14, 2010)

14 (citations omitted).  Therefore, the notarized Deed of Trust is presumed genuine, and the document

15 is "as strong as if the facts certified had been duly sworn to in open court by a witness apparently

16 disinterested and worthy of belief."  *Ware v. Julien*, 122 Cal. App. 354, 355 (1932) (citation

17 omitted).  The presumption is not conclusive, but "the burden of overcoming [the presumption] is on

18 the one who disputes" it; here, Defendants.  *Du Bois v. Larke*, 175 Cal. App. 2d 737, 745 (1959).

19 "When a disputable presumption is controverted by other evidence, a question of fact arises which

20 must be resolved by the trial court."  *Id*.  The document itself, standing alone, is sufficient "to send a

21 case to the jury, so that they may decide between the probative force of the certificate supported by

22 the presumption that it states the truth, on the one hand, and the evidence produced in rebuttal,

23 whatever it may be, on the other."  *Ware*, 122 Cal. App. at 355-56.

24     Accordingly, based on the presumption that the Deed of Trust is genuine, a jury must weigh

25 the evidence of the Deed of Trust itself against Defendants' evidence that Koo's signature on the

26 document was forged.  *See Hernandez*, 2010 WL 1493506, at *3 (denying summary judgment in

27 _____

28 [3] California Civil Code § 1181 provides that "[t]he proof or acknowledgment of an instrument
   may be made before a notary public at any place within this state."

**United States District Court**
For the Northern District of California

1    action by mortgagor to void a refinanced loan; "it is for the jury to weigh the evidence of the alleged

2    forged loan documents themselves against the evidence produced by Plaintiff indicating forgery.").

3           While Defendants' motion for summary judgment must be denied on the ground that the

4    Deed of Trust is presumed genuine, *see Ware*, 122 Cal. App. at 355-56, Simmons' opposition does

5    not rest solely on this argument.  It also presents evidence that it claims raises a triable issue of fact

6    concerning whether Koo did in fact sign the Deed of Trust.  Federal Rule of Evidence 901 provides

7    that handwriting may be authenticated by a non-expert, lay witness as long as the witness's

8    familiarity with the handwriting "was not acquired for the current litigation."  Fed. R. Evid.

9    901(b)(2); *see United States v. Dreitzler*, 577 F.2d 539, 553 n.24 (9th Cir. 1978) (noting that a

10   witness who was defendant's former secretary "was a qualified non-expert to testify as to whether

11   handwriting on certain government exhibits was that of [the defendant's].").  Laura Feuerborn, who

12   is the former office manager of Lehman's medical practice, testified that she has seen documents

13   Koo has signed with her initials, "MDK," and that the initials on the Deed of Trust appear similar to

14   those she has seen Koo sign.  (Feuerborn Dep. 75-76.)  She also testified that the signature on the

15   Third Party Pledge appears to be written by Koo.  (Feuerborn Dep. 87-88.)  Joanne Hetlage, the

16   office manager of Koo's medical practice, testified that she had seen Koo initial documents "[a]

17   hundred" times, and that the initials on the Deed of Trust appear to be written by Koo.  (Hetlage

18   Dep. 38-39, 42.)  Finally, David Apted, who has been Defendants' financial advisor for over 12

19   years, testified that the signature above Koo's name on the Deed of Trust "kind of looks like hers."

20   (Apted Dep. 15, 31-32.)[4]  While the testimony of Feuerborn, Hetlage, and Apted does not

21

22   ─────────────────────

23         [4] In its motion to supplement the record, Simmons asks the court to consider initial and
     supplemental expert reports by its retained handwriting expert dated January 30 and February 2, 2015,
24   respectively, in which he provides an opinion about the genuineness of the purported Koo signatures
     on the Deed of Trust.  Regarding the expert report, Simmons asserts that it only obtained in-person
25   handwriting exemplars from Koo at her second deposition on January 27, 2015, and its expert produced
     a supplemental report on February 2 incorporating his analysis of the new exemplars.  It also asks the
26   court to consider an email exchange dated May 6, 2013 between Koo and a real estate agent regarding
     the Woodside property which were not produced until January 27, 2015.  The court construes
27   Simmons's motion as an administrative motion pursuant to Civil Local Rule 7-11.  Defendants did not
     file an opposition to Simmons's motion to supplement.  The court grants the motion as to the May 2013
28   emails and will consider them, but denies the motion as to the expert reports on the grounds that the
     reports are unnecessary to resolving Simmons's motion for summary judgment.

United States District Court

For the Northern District of California

1   unequivocally authenticate Koo's signature and initials on the Deed of Trust, the court finds that this

2   evidence is enough to raise a genuine dispute of fact as to whether Koo signed the Deed of Trust.

3       Simmons also presents evidence that it argues raises triable issues of fact regarding

4   authorization. "A spouse may act as agent for the other in transactions affecting community

5   property." *United States v. Real Property Located at 3756 W. 106th Street*, 940 F.2d 1537, 2 (9th

6   Cir. 1991) (citing *In re Nelson*, 761 F.2d 1320, 1322 (9th Cir. 1985) (affirming bankruptcy court's

7   finding of "implied actual authority" where spouse was aware husband had signed her name to

8   documents, knew husband had signed her name to loan documents and had authority to do so, and

9   permitted husband to handle her personal finances)). Here, Koo testified that she did not authorize

10  anyone to sign her name or place her initials on the Deed of Trust, (Koo Decl. ¶ 2), and that Lehman

11  has never signed any documents on her behalf.  (Koo Dep. 131.)  However, Simmons submits

12  evidence contradicting Koo's assertion that Lehman has never signed documents on her behalf and

13  supporting its claim that Lehman signed Koo's name on the Deed of Trust.  Feuerborn testified that

14  she had seen Lehman sign Koo's name during a period of time when Koo was out of town, and that

15  it was "kind of common for him to do it."  (Feuerborn Dep. 110-11.)  Deanna Frailey, a former

16  office manager of Lehman's medical practice, testified that she had seen Lehman sign documents

17  more than 100 times, and stated that Koo's initials on the Deed of Trust and Third Party Pledge

18  resembled Lehman's handwriting.  (Frailey Dep. 67-68, 69-71, 73, 88-89.)  She also testified that

19  she was aware that Lehman had signed Koo's name on documents for Credit Suisse, Defendant's

20  financial advisor.  (Frailey Dep. 80-81.)  Hetlage testified that she had personally signed over 100

21  documents on Koo's behalf, including bank deposit slips.  (Hetlage Dep. 42-43.)  Simmons also

22  presents evidence that Lehman handles financial transactions for Koo.  (Koo Dep. 49-51.)

23       Additionally, Simmons presents evidence that appears to contradict Koo's own testimony

24  that she was unaware that the Deed of Trust had been recorded against the Woodside property.  In an

25  email exchange about a possible sale of the Woodside property with a real estate agent, Tony

26  Fregoso, Koo wrote to Fregoso on May 6, 2013 that "[w]e currently use that property as collateral

27  on a startup and I don't want to go through the legal time & expense of substituting collateral etc if

28  the buyers aren't serious."  (Murphy Decl., Feb. 5, 2015, ¶ 7 Ex. 4 ("the Fregoso email").)  This

United States District Court

For the Northern District of California

1   statement could be construed as an admission that Koo knew the Woodside property was pledged as

2   security for the Bonhomme loan.  This evidence, along with the testimony by Feuerborn, Frailey,

3   and Hetlage, which Defendants do not challenge, is sufficient to raise a genuine dispute of fact

4   regarding whether Koo authorized Lehman to sign the Deed of Trust on her behalf.  *See In re*

5   *Nelson*, 761 F.2d at 1322 ("Under California law, questions regarding the existence of an agency are

6   questions of fact.").

7          Simmons also argues that Koo should be estopped from denying that she signed the Deed of

8   Trust pursuant to *MacKay v. Darusmont*, 46 Cal. App. 2d 21 (1941).  In *MacKay*, the court held that

9   a spouse was estopped from attacking a transfer of property she claimed was community property

10  without her signature where she had enabled and caused the property's title to be placed in her

11  husband's name alone as separate property, knew of the sale to buyers, knew the consideration the

12  buyers paid her husband, and spoke with the buyers and never disclosed her community interest.  *Id.*

13  at 26-27; *see also In re Nelson*, 761 F.2d at 1323 (spouse estopped from attacking validity of deed of

14  trust she did not personally sign where it was "clear that [the spouse] received in one way or another

15  the benefit of the loan proceeds.").  In 2013, Lehman transferred his interest in Bonhomme to

16  Lehman and Koo.  It is also undisputed that proceeds from the $3 million line of credit were used to

17  pay off $33,901.99 in outstanding property taxes due on the Woodside property.  (Robertson Decl.,

18  Jan. 15, 2015, ¶¶ 3-8, Ex. 1 (reflecting payments by Excel to San Mateo County Tax Collector).)

19  Further, the Fregoso email could lead a factfinder to infer that Koo was aware that the Woodside

20  property was security for the Bonhomme loan.  Therefore, Simmons argues she benefitted from the

21  loan, yet waited until this litigation to disavow the transaction and assert that her signature on the

22  Deed of Trust was forged.  Additionally, Simmons presents evidence that Koo was aware of the

23  appraisal of the Woodside property, arranged by Davis, and that she consented to the appraisal.

24  (Koo Dep. 119-122.)  The court finds that these facts are sufficient to raise a dispute of fact as to

25  whether Koo is estopped from denying the validity of the Deed of Trust.  *See In re Marriage of*

26  *Burkle*, 139 Cal. App. 4th 712, 751 (2006) (doctrines of estoppel, ratification, and laches barred

27  spouse from challenging validity of transfer of community property by husband because she

28  accepted benefits of transaction over five-year period with knowledge of transfer).

United States District Court

For the Northern District of California

In sum, the court finds that Simmons has introduced evidence sufficient to raise triable issues of fact regarding whether Koo signed the Deed of Trust, authorized Lehman to sign the Deed of Trust on her behalf, or should be estopped from disavowing the Deed of Trust. Accordingly, Defendants' motion for summary judgment is denied.[5]

**B.     Simmons's Motion**

    **1.     Whether Simmons's Motion is Moot**

Simmons moves for summary judgment on Defendants' second through fifth affirmative defenses in which Defendants allege that they were induced to enter into the loan transactions by misrepresentations and omissions made by Shaun Hayes, a shareholder of Excel's holding company. On January 22, 2015, after Simmons filed its motion, Defendants filed answers, affirmative defenses, and counterclaims to Simmons's amended complaint, superseding their original answers. Defendants contend that Simmons's motion is moot because it is directed to the affirmative defenses in their original answers. However, upon careful review of Defendants' original and operative answers, the court finds that they allege the same fraud-based affirmative defenses based on identical facts; i.e., Excel and Hayes's "misrepresentations of material facts and their omission of material facts." (*Compare* Lehman Answer ¶¶ 28-31 *with* Lehman Answer to Am. Compl. ¶¶ 38-41; Koo Answer ¶¶ 28-31 *with* Koo Answer to Am. Compl. ¶¶ 38-41.) The only substantive change is the addition of the affirmative defense of fraud in the factum, which is also based on Excel and Hayes's "misrepresentations of material facts and their omission of material facts." (Lehman Answer to Am. Compl. ¶37; Koo Answer to Am. Compl. ¶ 37.) As Simmons's motion challenges *the legal sufficiency* of Defendants' affirmative defenses, including the affirmative defense of fraud

---

[5] Simmons also argues that the Deed of Trust is immediately enforceable because Koo never commenced an action to void the instrument. *See Clar v. Cacciola*, 193 Cal. App. 3d 1032, 1036 (1987) ("unauthorized gifts, sales or encumbrances of community property are not void, but voidable, and this only at the instance of the other spouse or his or her personal representative"); 5 Miller & Starr, Cal. Real Est. § 12:54 (3d ed.) ("An encumbrance without the consent of a spouse is only voidable by the nonconsenting spouse and is valid if he or she does not challenge the conveyance or encumbrance. . . . Any action to avoid the transaction by the nonconsenting spouse must be commenced within three years after knowledge of the transaction . . ."). However, in her answer to Simmons's amended complaint, filed after Simmons's opposition to Defendants' motion for summary judgment, Koo brings counterclaims for slander and disparagement of title, quiet title, and declaratory judgment, seeking to void the Deed of Trust. (Koo Answer to Am. Compl. ¶¶ 56-74.) Therefore, this argument is moot.

in the factum, (*see* Pl.'s Mot. 14-19), and none of Defendants' changes to their affirmative defenses materially affect Simmons's motion, the court will not require Simmons to file a new motion for summary judgment.  *See Buechler v. Your Wine & Spirit Shoppe, Inc.*, 846 F. Supp. 2d 406, 414 (D. Md. 2012) (holding that a motion for summary judgment was not mooted by the filing of amended complaint because "such a motion is not directed at the adequacy of a complaint's allegations but is instead focused on the merits of the substantive claim."); *see also* Fed. R. Civ. P. 1 (the Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding").

Accordingly, the court construes Simmons's motion as a motion for summary judgment on the following operative affirmative defenses: 1) fraud in the factum (second affirmative defense); 2) fraud in the inducement (third); 3) violations of the Securities Exchange Act, 15 U.S.C. § 78a, *et seq.* (fourth); 4) violations of the Missouri Securities Act, Mo. Rev. Stat. § 409.5-501, *et seq.* (fifth); and 5) negligent misrepresentations (sixth).

## 2.    Applicability of 12 U.S.C. § 1823(e)

Through the affirmative defenses at issue in this motion, Defendants assert that the Loan Documents, including the Deed of Trust, are void, invalid, or otherwise unenforceable because they "resulted from misrepresentations as to the character and/or essential terms of the proposed agreements and transactions" by Excel and Hayes, which were relied upon by Bonhomme and Lehman.  (Lehman Answer to Am. Compl. ¶¶ 37, 38; *see also* ¶¶ 39-41; Koo Answer to Am. Compl. ¶¶ 37, 38; *see also* ¶¶ 39-41.)  Specifically, Defendants assert that Excel and Hayes's misrepresentations and omissions include the following:

> (1) Excel Bank and Shaun Hayes deceptively conditioned Excel Bank's loan to Bonhomme, as well as a loan from Truman Bank, on Bonhomme's purchasing certain common stock in Truman Bank's parent holding company, Truman Bancorp, Inc. ("Bancorp") (the "Bancorp Common Stock"); (2) Excel Bank and Shaun Hayes failed to provide material information regarding the applicable lending standards for Excel Bank and Truman Bank; (3) Excel Bank and Shaun Hayes failed to disclose that Truman Bank and Bancorp were having financial difficulties, or that the Bancorp Common Stock was worth less than the cost of purchasing it; (4) Excel Bank and Shaun Hayes falsely stated that Lehman would need to pledge certain California property he jointly owned with his wife . . . Koo ("the property") to secure Bonhomme's loan, that Lehman's pledge of the Property was necessary to meet Excel Bank's lending standards, and that, if Lehman pledged the Property, Excel Bank would at a later date substitute the Bancorp Common

United States District Court

For the Northern District of California

Stock as collateral for the loan and release its lien on the Property; and (5) Excel Bank and Shaun Hayes failed to disclose that Bancorp and Truman Bank were subject to a December 10, 2008 Agreement by and between The Templar Fund, Inc., Bancorp, FFC Financial Corporation, Truman Bank and the Federal Reserve Bank of St. Louis (the "Consent Decree"), which Consent Decree governed and restricted certain actions by Bancorp and Truman Bank.

(Lehman Answer to Am. Compl. ¶ 37; Koo Answer to Am. Compl. ¶ 37.)  Simmons argues that these defenses rely on "oral side agreements or conditions that tend to diminish Simmons's interest" in the loan and are therefore barred by 12 U.S.C. § 1823(e) and the Supreme Court's holding in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 461 (1942) (the "*D'Oench, Duhme* doctrine"). (Pl.'s Mot. 8.)

12 U.S.C. § 1823(e) and the *D'Oench, Duhme* doctrine "prohibit unwritten, undocumented claims and defenses against the FDIC or an assignee bank." *Cmty. Bank of Ozarks v. FDIC*, 984 F.2d 254, 256 (8th Cir. 1993); *see Brookside Assocs. v. Rifkin*, 49 F.3d 490, 493 (9th Cir. 1995) ("[t]he *D'Oench, Duhme* doctrine . . . is a principle of equitable estoppel that permits bank examiners to rely on the records of a bank in evaluating the bank's financial condition, by protecting the bank authorities from suits founded on undisclosed conditions or deceptive documents." (citations omitted)).  An agreement that would effectively limit the liability of a borrower to the FDIC must satisfy strict statutory requirements.  Section 1823(e) provides in relevant part that "[n]o agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, . . . as receiver of any insured depository institution, shall be valid against the [FDIC]" unless the agreement:

(A) is in writing,

(B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(D) has been, continuously, from the time of its execution, an official record of the depository institution.

United States District Court

For the Northern District of California

1  12 U.S.C. § 1823(e)(1).  The "function and purpose of *D'Oench, Duhme* and section 1823(e) . . . [is

2  to] preclude[] obligors from asserting side deals or secret agreements which may mislead bank

3  examiners against the [FDIC] to diminish the value of written loan obligations.  Section 1823(e) bars

4  the use of extrinsic agreements to diminish or defeat the [FDIC's] interest in an asset, unless the

5  documents meet specific requirements."  *Resolution Trust Corp. v. Kennelly*, 57 F.3d 819, 821 (9th

6  Cir. 1995) (quoting *FDIC v. Zook Bros. Constr. Co.*, 973 F.2d 1448, 1450-51 (9th Cir. 1992)).[6]  The

7  protections of section 1823(e) and the *D'Oench, Duhme* doctrine extend to private institutions who

8  acquire assets of failed financial institutions from the FDIC.  *Newton v. Uniwest Fin. Corp.*, 967

9  F.2d 340, 347 (9th Cir. 1992); *Cmty. Bank of Ozarks*, 984 F.2d at 257.  A party asserting an

10  affirmative defense based on an agreement with a bank bears the burden of proving that the

11  agreement meets all of the requirements of section 1823(e)(1).  *FDIC v. Arciero*, 741 F.3d 1111,

12  1116 (10th Cir. 2013) (party raising affirmative defense has burden of showing agreement meets

13  section 1823(e)(1)'s requirements); *FDIC v. Manatt*, 922 F.2d 486, 488 (8th Cir. 1991) ("[i]f the

14  agreement fails to meet any one of the four requirements [of section 1823(e)], the FDIC is not bound

15  by the agreement").

16      In *Langley v. FDIC*, 484 U.S. 86 (1987), the Supreme Court expanded the scope of

17  *D'Oench, Duhme* by holding that the term "agreement" in section 1823(e) "covers more than

18  promises to perform acts in the future"; it also includes misrepresentations constituting fraud in the

19  inducement.  *Id*. at 92-94.  Since *Langley*, numerous courts have concluded that fraud based upon

20  material omissions, as opposed to affirmative misrepresentations, also falls within the meaning of

21  "agreement" under section 1823(e).  *See, e.g., FDIC v. Hudson*, 800 F. Supp. 867, 871 (N.D. Cal.

22  1990) (citing *FDIC v. Bell*, 892 F.2d 64, 66 (10th Cir. 1989)); *Avirez, Ltd. v. Resolution Trust Corp.*,

---

24  [6] The Tenth Circuit further explained the purpose of section 1823(e) in *FDIC v. Arciero*, 741

25  F.3d 1111 (10th Cir. 2013), noting that the FDIC would be at a disadvantage "in litigating such claims because its personnel lack first-hand knowledge of the relevant events, and those who would have such

26  knowledge–the failed bank's directors, officers, and employees–often have nothing personally at stake while their loyalties may be to the bank customers rather than to the FDIC."  *Id*. at 1115.  Therefore,

27  section 1823(e) "allow[s] federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets."  *Langley v. FDIC*, 484 U.S. 86, 91-92 (1987) ("[n]either the FDIC nor state

28  banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions.").

United States District Court

For the Northern District of California

1   876 F. Supp. 1135, 1141 (C.D. Cal. 1995) ("section 1823(e) applies as much to misrepresentation

2   claims based upon non-disclosures as to those based upon affirmative assertions."); *FDIC v.*

3   *Tarkanian*, No. 10cv980-WQH-BGS, 2012 WL 1327849, at *4 (S.D. Cal. Apr. 17, 2012) (following

4   *Avirez*, granting summary judgment on counterclaims based upon misrepresentations and

5   omissions).

6          Simmons argues that the allegations supporting the affirmative defenses at issue here are

7   based upon "alleged misrepresentations, misleading omissions, or side promises." (Pl.'s Mot. 9.) In

8   their third affirmative defense, "fraud in the inducement," Defendants allege that the Loan

9   Documents are "void, invalid, and unenforceable" due to Excel and Hayes's misrepresentations and

10  omissions, including failing to provide material information regarding applicable lending standards;

11  conditioning the loan on Bonhomme's purchasing Bancorp stock, which was worthless; falsely

12  promising that if Lehman pledged the Woodside property to secure the loan, Excel would later

13  substitute Bancorp stock as collateral and release its lien on the Woodside property; and failing to

14  disclose the existence of a restrictive consent decree governing Bancorp and Truman Bank.

15  Defendants' fourth and fifth affirmative defenses are for violations of the Securities Exchange Act,

16  15 U.S.C. § 78a, *et seq.*, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and

17  violations of the Missouri Securities Act, Mo. Rev. Stat. § 409.5-501, *et seq.*,[7] which each make it

18  _____

19          [7] Rule 10b-5 of the Securities Exchange Act provides:

20          It shall be unlawful for any person, directly or indirectly, by the use of any means or
            instrumentality of interstate commerce, or of the mails or of any facility of any national
21          securities exchange,

22                 (a) To employ any device, scheme, or artifice to defraud,

23                 (b) To make any untrue statement of a material fact or to omit to state a material fact
                   necessary in order to make the statements made, in the light of the circumstances under
24                 which they were made, not misleading, or

25                 (c) To engage in any act, practice, or course of business which operates or would operate
                   as a fraud or deceit upon any person,

26          in connection with the purchase or sale of any security.

27  17 C.F.R. § 240.10b-5. The Missouri Securities Act provision is nearly identical. It provides:

28          It is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly

United States District Court
For the Northern District of California

1 //

2 //

3 unlawful for a person to make an "untrue statement of a material fact or to omit to state a material

4 fact" in connection with the purchase or sale of a security.  17 C.F.R. § 240.10b-5; Mo. Ann. Stat. §

5 409.5-501.  In their sixth affirmative defense, "negligent misrepresentations," Defendants allege that

6 the Excel and Hayes's "material misstatements and omissions of fact . . . if not intentional, were

7 negligent and reckless."  (Koo Answer to Am. Compl. ¶ 41; Lehman Answer to Am. Compl. ¶ 41.)

8 These defenses rest on the same facts supporting the fraud in the inducement defense; specifically,

9 the allegation that Defendants "were induced by Excel Bank's and Shaun Hayes' misstatements and

10 omissions" in violation of those laws.  (Koo Answer to Am. Compl. ¶¶ 39, 40; Lehman Answer to

11 Am. Compl. ¶¶ 39, 40; *see* Defs.' Opp'n 8 ("the misrepresentations induced Bonhomme to enter into

12 the Note, and that 'but for' those misrepresentations, Bonhomme would not have executed the

13 Note.).)  As Defendants have produced no written documentation of these misrepresentations,

14 omissions, and promises that would satisfy the requirements of section 1823(e), Simmons asserts

15 that the counterclaims fail as a matter of law.

16       Defendants do not address Simmons's arguments that counterclaims based upon allegations

17 of fraud in the inducement are barred unless they comply with section 1823(e)(1), and accordingly

18 concede this issue.  Therefore, summary judgment is granted as to Defendants' third, fourth, fifth,

19 and sixth affirmative defenses: 1) fraud in the inducement (third); 2) violations of the Securities

20 Exchange Act, 15 U.S.C. § 78a, *et seq*. (fourth); 3) violations of the Missouri Securities Act, Mo.

21 Rev. Stat. § 409.5-501, *et seq*. (fifth); and 4) negligent misrepresentations (sixth).

22 ─────────────

23     or indirectly:

24         (1) To employ a device, scheme, or artifice to defraud;

25         (2) To make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which it is made, not misleading; or

26         (3) To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

27

28 Mo. Ann. Stat. § 409.5-501.

1   //

2   //

3          Defendants argue that the remaining counterclaim for fraud in the factum renders the loan

4   void, rather than voidable, thus taking it out of the protections of section 1823(e).  Defendants rely

5   on *Langley*, in which the Court distinguished fraud in the factum from fraud in the inducement,

6   noting that fraud in the factum "would take the instrument out of § 1823(e), because it would render

7   the instrument entirely void, thus leaving no 'right, title or interest' that could be 'diminish[ed] or

8   defeat[ed].'"  *Langley*, 484 U.S. at 93-94 (internal citations omitted).  First, the Ninth Circuit has

9   noted that this statement was "dictum," and that the Court "did not expressly hold that the defense of

10  fraud in the factum is not barred by section 1823(e) and *D'Oench, Duhme*."  *Kennelly*, 57 F.3d at

11  822 (declining to decide the issue because it concluded that defendants had failed to allege or

12  establish fraud in the factum).

13         More importantly, Defendants have not adequately alleged or established fraud in the

14  factum.  Restatement (Second) of Contracts section 163 provides: "If a misrepresentation as to the

15  character or essential terms of a proposed contract induces conduct that appears to be a

16  manifestation of assent by one who neither knows nor has reasonable opportunity to know of the

17  character or essential terms of the proposed contract, his conduct is not effective as a manifestation

18  of assent."  Restatement (Second) of Contracts § 163 (1981).  "Fraud in the factum is 'the sort of

19  fraud that procures a party's signature to an instrument without knowledge of its true nature or

20  contents.'"  *Kennelly*, 57 F.3d at 822 (citing *Langley*, 484 U.S. at 93); *see also* Black's Law

21  Dictionary 776, fraud in the factum (10th ed. 2014) ("Compared to fraud in the inducement, fraud in

22  the factum occurs only rarely, as when a blind person signs a mortgage when misleadingly told that

23  the paper is just a letter.").  Here, Defendants do not allege or present evidence that Excel or Hayes

24  misrepresented anything about the "character or essential terms" of any of the Loan Documents,

25  including the Deed of Trust.  In fact, in their opposition, they admit that "the alleged fraudulent

26  misrepresentations by Excel Bank and Hayes *do not contradict* the relevant terms and conditions of

27  the Note or Deed of Trust," (Defs.' Opp'n 8 (emphasis added)), thus conceding that there was no

28  misrepresentation as to the character or essential terms of the Loan Documents.  In other words,

16

United States District Court

For the Northern District of California

1  //

2  //

3  there is no dispute that the Loan Documents evidenced a loan transaction purporting to encumber the

4  Woodside property.  *See Beazie v. Amerifund Fin., Inc.*, No. 09-00562 JMS/KSC, 2011 WL

5  2457725, at * (D. Haw. June 16, 2011) ("the FAC does not assert fraud in the factum–Plaintiff knew

6  he was entering into a mortgage loan transaction on the subject property.").  Nor do Defendants cite

7  any evidence that they lacked "reasonable opportunity to know of the character or essential terms"

8  of the loan transaction.  While Lehman denies any recollection of the circumstances during which he

9  signed the Loan Documents, (Lehman Dep. 105, 107, 187-88, 199, 200-208), Simmons presents

10 deposition testimony by Davis, Bonhomme's managing member, in which he admits he was

11 provided with the Loan Documents and had the opportunity to read and review them before signing

12 and that he understood the nature of the documents.  (Davis Dep. 53-56, 61-62, 66-68, 89-90, 93-94,

13 155-57.)

14      In sum, Defendants present no evidence to establish that a genuine dispute of fact exists as to

15 whether their second affirmative defense sounds in fraud in the factum.  The court finds that

16 Defendants' second affirmative defense is based upon fraud in the inducement, because it is

17 premised on alleged misrepresentations, omissions of material facts, and side promises that induced

18 Bonhomme to enter into the loan.  Accordingly, the allegations of misrepresentations, omissions,

19 and side promises fall within the meaning of "agreements" under section 1823(e)(1).  As Defendants

20 have failed to submit evidence that the agreements satisfy the requirements of section 1823(e)(1),

21 they cannot form the basis of affirmative defenses.  Therefore, Simmons's motion for summary

22 judgment is granted as to Defendants' second affirmative defense, labeled "fraud in the factum."[8]

23                                    **V. Conclusion**

24      For the foregoing reasons, Defendants' motion for summary judgment is denied.  Simmons's

25 motion is granted.  Summary judgment is granted as to Defendants' affirmative defenses of 1) fraud

26 in the factum; 2) fraud in the inducement; 3) violations of the Securities Exchange Act, 15 U.S.C. §

27 _____

28      [8] Because the court grants Simmons's motion based on section 1823(e), it need not reach Simmons's remaining arguments in support of its motion.

**United States District Court**
For the Northern District of California

1  78a, *et seq.*; 4) violations of the Missouri Securities Act, Mo. Rev. Stat. § 409.5-501, *et seq.*; and 5)

2  negligent misrepresentations.

4          IT IS SO ORDERED.

6  Dated:  February 13, 2015



DONNA M. RYU
Donna M. Ryu
United States Magistrate Judge