UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMMONS FIRST NATIONAL BANK,<br><br>           Plaintiff,<br><br>     v.<br><br>RICHARD C. LEHMAN, et al.,<br><br>           Defendants. | Case No. 13-cv-02876-DMR<br><br>**ORDER ON PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**<br><br>Re: Dkt. No. 116 |

Plaintiff Simmons First National Bank ("Simmons") brings this action for judicial foreclosure against real property owned by Defendants Richard C. Lehman and Michele D. Koo. Simmons now moves to dismiss Defendants' counterclaims for slander of title, quiet title, and declaratory relief. [Docket No. 116.] On March 23, 2015, Defendants moved for leave to file a sur-reply and submitted their proposed sur-reply. [Docket Nos. 133, 133-1.] The court has determined that this matter is appropriate for determination without a hearing pursuant to Civil Local Rule 7-1(b). Having carefully considered the parties' submissions and the relevant legal authority the court hereby grants Defendants' motion for leave to file a sur-reply and grants Simmons's motion.

**I. Facts**

**A.  Factual Background and Procedural History**

This dispute concerns a February 4, 2009 deed of trust ("the Deed of Trust") recorded against Defendants' residential property in Woodside, California ("the Woodside property"). As discussed in the court's February 13, 2015 Order on the parties' motions for summary judgment (Docket No. 113 ("MSJs Order"), the Deed of Trust secured a $3 million loan made by Excel Bank ("Excel") to Bonhomme Investment Partners, LLC ("Bonhomme"). At the time Excel

made the loan, Defendant Lehman and third party Donald Davis were the sole owners of Bonhomme. In 2013, Lehman transferred his interest in Bonhomme to Lehman and Koo, his wife. (MSJs Order 9.) Excel failed in October 2012 and the Federal Deposit Insurance Corporation ("FDIC") took control of Excel's assets as a receiver. Simmons acquired certain of Excel's assets through a Purchase and Assumption Agreement between Simmons and the FDIC, including the Bonhomme loan and the Deed of Trust. (MSJs Order 1-2.)

On May 22, 2013, Simmons filed a state court complaint against Defendants for judicial foreclosure, specific performance, and injunctive relief. Defendants removed the case to federal court on June 21, 2013. In July 2013, Defendants answered and asserted affirmative defenses, including that they were induced to enter into the loan transactions by oral representations made by Shaun Hayes, a shareholder of Excel's holding company. [Docket Nos. 12 (Koo Answer) ¶ 28, 15 (Lehman Answer) ¶ 28.] They also asserted that "[n]either Defendant Lehman nor Defendant Koo executed the Trust Deed before the notary public who purported to notarize the Trust Deed," and that the Deed of Trust was fraudulent at its inception. (Koo Answer ¶ 41; Lehman Answer ¶ 41.) At her July 15, 2014 deposition, Koo claimed for the first time that her signature on the Deed of Trust was forged, and later submitted a declaration in which she stated that she did not execute the Deed of Trust, did not authorize anyone to execute the Deed of Trust, and had not met the notary who had notarized the Deed of Trust. (MSJs Order 5; Koo Decl., Nov. 5, 2014, ¶ 2.)

On January 8, 2015, the court granted Simmons leave to file an amended complaint. [Docket No. 91.] On January 9, 2015, Simmons filed an amended complaint, again alleging claims for 1) judicial foreclosure; 2) specific performance; and 3) injunctive relief. It also alleged alternative bases for enforcing the Deed of Trust, including, *inter alia*, estoppel. [Docket No. 92 (Am. Compl.).] Defendants answered on January 22, 2015, bringing counterclaims for 1) slander and disparagement of title; 2) quiet title; and 3) declaratory judgment. [Docket Nos. 98 (Koo Counterclaims), 99 (Lehman Counterclaims).]

On February 13, 2015, the court granted Simmons's motion for partial summary judgment on Defendants' five fraud-based affirmative defenses on the grounds that they are barred by 12

U.S.C. § 1823(e) and the *D'Oench, Duhme* doctrine[1]. [Docket No. 113.] The court also denied Defendants' motion for summary judgment on the grounds that genuine issues of material fact exist as to whether Koo signed the Deed of Trust, authorized Lehman to sign the Deed of Trust on her behalf, or should be estopped from disavowing the Deed of Trust.

**B.     Defendants' Factual Allegations**

Defendants assert three counterclaims: 1) slander and disparagement of title; 2) quiet title; and 3) declaratory judgment pursuant to 28 U.S.C. § 2201.

Defendants allege that Koo never executed the Deed of Trust and never authorized anyone to execute it on her behalf; therefore, the Deed of Trust is false and Simmons is aware of its falsity. (Defs.' Counterclaims ¶¶ 59, 60.) They further allege that Excel recorded the Deed of Trust on or about February 17, 2009 in San Mateo County, and that Simmons continues to "publish and rely on the Deed of Trust," seeking to foreclose on the Woodside Property by means of the Deed of Trust. (Defs.' Counterclaims ¶ 57.) Defendants also allege that the false publication of the Deed of Trust, as well as Simmons's continued reliance upon and attempted enforcement of the Deed of Trust are not protected by any privilege. (Defs.' Counterclaims ¶ 61.) According to Defendants, Simmons's behavior evidences "intentional fraud, oppression and malice , and a conscious disregard for" Defendants' rights. (Defs.' Counterclaims ¶ 64.) Finally, Defendants allege that Simmons's disparagement and slander of title to the Woodside property have resulted in pecuniary loss to Defendants. They assert that its vendibility has been impaired and that they have incurred attorneys' fees and costs to attempt to quiet title to the property. (Defs.' Counterclaims ¶ 63.)

Simmons now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all of Defendants' counterclaims.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

---

[1]  *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 461 (1942).

When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record'" pursuant to Federal Rule of Evidence 201. *Id.* at 688-89 (9th Cir. 2001) (quoting *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)); *see, e.g., Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002). The court need not accept as true allegations that contradict facts which may be judicially noticed, *see Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987), or documents referred to in the complaint. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

### III. Discussion

**A.    Timeliness of the Motion**

As a preliminary matter, Defendants argue that the motion should be denied on the ground that it is untimely. On May 28, 2014, the court entered an amended case management and pretrial order in which it set February 12, 2015 as the last day for hearing dispositive motions. [Docket

4

No. 48.] In its motion, Simmons requests that the court modify the scheduling order to allow this motion. According to Simmons, it has timely and diligently responded to Defendants' counterclaims, which were asserted on January 22, 2015. Given the timing of the counterclaims, it would not have been possible to brief and notice a motion to dismiss to be heard before February 12, 2015. *See* N.D. Cal. Civ. L.R. 7-2(a) ("all motions must be filed, served and noticed in writing . . . for hearing not less than 35 days after service of the motion.").

Federal Rule of Civil Procedure 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." The "good cause" standard "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). "A party demonstrates good cause for the modification of a scheduling order by showing that, even with the exercise of due diligence, he or she was unable to meet the timetable set forth in the order." *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C.D. Cal. 2003) (citing *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002)). Here, the court finds that Simmons has timely and diligently responded to Defendants' counterclaims. Further, the court notes that with trial set to begin at the end of April 2015, these are essentially last-minute counterclaims, and there is no evidence that Defendants were prevented from asserting them sooner.[2] Accordingly, the court finds good cause to modify the case management schedule to permit this dispositive motion.

**B.     Analysis**

   **1.     Slander of Title**

"The recordation of an instrument facially valid but without underlying merit will give rise to an action for slander of title." *Stamas v. Cnty. of Madera*, 795 F. Supp. 2d 1047, 1068 (E.D. Cal. 2011) (citing *Seely v. Seymour*, 190 Cal. App. 3d 844, 857 (1987)). To state a claim for slander of title, Defendants must allege "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss." *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1051 (2009).

---

[2] However, as Simmons did not move to dismiss the counterclaims on the basis that they are untimely, the court will not consider dismissing them on that basis.

5

Defendants' slander of title claim is based upon the publication of the allegedly false Deed of Trust. Simmons argues that the claim fails because Defendants have not asserted an actionable publication by Simmons. Defendants concede that Simmons is not liable for Excel's initial recording of the Deed of Trust. (Defs.' Opp'n 7-8.) Instead, they argue that their slander of title claim is based upon Simmons's continued maintenance of the Deed of Trust, such as "keeping it on the Recorder's books," (*see* Defs.' Opp'n 7; Defs.' Counterclaims ¶ 57) as well as continued reliance on the Deed of Trust to publish other documents, such as the Purchase and Assumption Agreement ("P&A agreement") by which Simmons acquired Excel's assets from the FDIC. (Defs.' Opp'n 7.)

By arguing that Simmons wrongfully "maintained" the Deed of Trust, Defendants attempt to impose liability on Simmons for not taking action to remove the Deed of Trust from the public record. However, a slander of title claim requires an affirmative act of publication. *See Ghuman v. Wells Fargo Bank, N.A.*, 989 F. Supp. 2d 994, 1000 (E.D. Cal. 2013) ("[s]lander of title occurs when a person, 'without a privilege to do so, *publishes* a false statement that disparages title to property" (emphasis added) (quoting *Sumner Hill Homeowners Ass'n, Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1030 (2012))). Defendants do not cite any authority supporting their claim that a failure to take action can form the basis of a claim of slander of title under California law.[3] Simmons's failure to remove the Deed of Trust from the recorder's office is not an actionable publication for purposes of a slander of title claim.

Defendants' claim that the P&A agreement satisfies the publication requirement is also without merit.[4] The P&A agreement does not reference the Deed of Trust, nor does it mention the

---

[3] The only case Defendants cite in support of their position is *Shenefield v. Axtell*, 545 P.2d 876, 878 (Or. 1976), an Oregon Supreme Court case. In *Shenefield*, the plaintiffs brought a slander of title claim against the defendant alleging he wrongfully refused to remove his claim of title to certain real property from county records despite a previous judgment against the defendant stating that he did not own the property. *Id.* at 877. The defendant demurred, arguing that the plaintiffs failed to adequately allege special damages. The court concluded that the plaintiffs had adequately alleged special damages and that the complaint sufficiently stated a cause of action for slander of title. *Id.* at 878. It did not address the question at issue here, whether an omission can form the basis for a slander of title claim. Moreover, the court analyzed the slander of title claim under Oregon law, not California law, and is thus inapposite.

[4] Notably, Defendants do not allege in their counterclaims that the P&A agreement contains a false

6

1   Woodside Property or Defendants.  It simply discusses the mechanics of the transfer of assets

2   from Excel to Simmons.  (*See* Defs.' Request for Judicial Notice (RJN), Ex. 1 (Oct. 19, 2012

3   P&A Agreement)[5].)

4   In their sur-reply, Defendants also argue that the assignment transferring the Deed of Trust

5   from the FDIC to Simmons constitutes an actionable publication.[6]  (*See* Pl.'s Supplemental RJN,

6   Ex. 5 (Assignment).)  The assignment was executed on March 27, 2013 and recorded on April 9,

7   2013 in San Mateo County, shortly before Simmons filed this lawsuit in June 2013.  According to

8   Simmons, the assignment was a prerequisite to filing this lawsuit; therefore, it is absolutely

9   privileged under California Civil Code section 47(b).  Section 47(b), known as the litigation

10  privilege, provides that "[a] privileged publication or broadcast is one made . . . [i]n any . . .

11  judicial proceeding."  Cal. Civ. Code § 47(b).  The privilege has the effect of "immunizing

12  [litigants] from liability for torts arising from communications made during judicial proceedings."

13  *Silberg v. Anderson*, 50 Cal. 3d 205, 214 (1990).  The California Supreme Court has held that the

14  litigation privilege "applies to any communication (1) made in judicial or quasi-judicial

15  proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of

16  the litigation; and (4) that have some connection or logical relation to the action."  *Id*. at 212

17  (citations omitted).  The privilege is "not limited to statements made during a trial or other

18  proceedings, but may extend to steps taken prior thereto, or afterwards."  *Rusheen v. Cohen*, 37

---

statement concerning the Deed of Trust; in fact, the counterclaims contain no mention of the P&A agreement at all.

[5] The court grants Defendants' request for judicial notice in support of their opposition to Simmons's motion to dismiss. [Docket No. 120.]  The documents attached thereto include court filings from related proceedings in Missouri. These filings have a direct relation to the matters at issue and are properly judicially noticed.  *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).  The court also grants Simmons's supplemental request for judicial notice in support of its reply, which includes a true and correct copy of an official public record of the San Mateo County Recorder's Office, whose authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  *See* Fed. R. Evid. 201(b).

[6] Defendants argue that Simmons only produced this document on March 10, 2015, after a deponent testified about the assignment, even though it was responsive to Defendants' discovery requests. (Pabst Decl., March 23, 2015, ¶¶ 2, 3.)  Defendants did not allege this assignment in their counterclaims, but referred to unspecified "assignment documents or non-judicial foreclosure filings" in their opposition. (*See* Defs.' Opp'n 8.)

7

1    Cal. 4th 1048, 1057 (2006) (citation omitted).  It "applies to any publication required or permitted
2    by law in the course of a judicial proceeding to achieve the objects of the litigation, even though
3    the publication is made outside the courtroom and no function of the court or its officers is
4    involved."  *Silberg*, 50 Cal. 3d at 212.  Here, Simmons was required to be the holder of the Deed
5    of Trust in order to file suit to judicially foreclose on the Woodside Property.  Therefore, to
6    achieve the "object[] of the litigation" – judicial foreclosure – Simmons had to record the
7    assignment of the Deed of Trust.  Accordingly, the court finds that the assignment was absolutely
8    privileged pursuant to section 47(b) and thus may not form the basis for the slander of title claim.

9    Even if the assignment were only subject to the conditional privilege of California Civil
10   Code section 47(c), Defendants cannot establish malice sufficient to defeat the privilege.
11   California Civil Code section 47(c)(1) states: "[a] privileged publication or broadcast is one made:
12   (c) [i]n a communication, without malice, to a person interested therein, (1) by one who is also
13   interested."  Cal. Civ. Code § 47(c)(1).  An exemption to the section 47(c) privilege arises upon an
14   allegation of malice, and the malice required to defeat the conditional privilege requires "that the
15   publication was motivated by hatred or ill will towards the [party challenging publication] or by a
16   showing that the [declarant] lacked reasonable grounds for belief in the truth of the publication
17   and therefore acted in reckless disregard" of the rights of the party challenging the publication.
18   *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 336 (2008) (citation omitted).  Here, Koo did not
19   articulate her position that the Deed of Trust had been forged until her deposition in July 2014,
20   over a year *after* the March 2013 execution of the assignment.  Moreover, Defendants' original
21   theories—that neither Lehman nor Koo "executed the Trust Deed before the notary public who
22   purported to notarize the Trust Deed," and that the Deed of Trust was fraudulent at its inception
23   due to Hayes's alleged misrepresentations—were only asserted in this litigation.  Therefore,
24   Simmons could not have known that the Deed of Trust was allegedly false at the time the
25   assignment was executed, before it filed its complaint for judicial foreclosure.

26   Therefore, as Defendants have not alleged an actionable publication, their slander of title

1  claim fails.[7]  Defendants have not identified any other possible actionable publication.  The court
2  is now well-acquainted with the documents in this case, and cannot think of any.  Therefore, it
3  appears that amendment would be futile.  However, in an excess of caution, Defendants have one
4  week to seek leave to amend the slander of title counterclaim by naming an actionable publication.

### 2. Quiet Title

Defendants' second claim is for quiet title.  "The purpose of a quiet title action is to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to."  *Horton v. Cal. Credit Corp. Retirement Plan*, 835 F. Supp. 2d 879, 892 (S.D. Cal. 2011) (internal quotation marks omitted) (quoting *Newman v. Cornelius*, 3 Cal. App. 3d 279, 284 (1970) (quotation omitted)).  Quiet title claims are governed by California Code of Civil Procedure section 761.020, which provides that a complaint to quiet title "shall be verified," and requires the complaint to include "(a) [a] description of the property that is the subject of the action . . . ; (b) [t]he title of the plaintiff as to which a determination . . . is sought and the basis of the title . . . ; (c) [t]he adverse claims to the title of the plaintiff against which a determination is sought; (d) [t]he date as of which the determination is sought . . . ; [and] (e) [a] prayer for the determination of the title of the plaintiff against the adverse claims."  Cal. Civ. Proc. Code § 761.020.

Simmons argues that Defendants' quiet title claim fails because they cannot prove that the Deed of Trust is false, and therefore cannot show that they are the rightful owners of the Woodside Property.  However, Defendants' claim that the Deed of Trust is false is based upon their allegations that Koo never executed the Deed of Trust and never authorized anyone to execute it on her behalf.  (*See* Defs.' Counterclaims ¶ 59.)  The court has already identified the existence of triable issues of fact on these issues.  (MSJs Order 10.)  Therefore, the validity or falsity of the Deed of Trust is a question to be determined by the factfinder, and is not appropriate for resolution on a 12(b)(6) motion to dismiss.

Simmons next argues that the quiet title claim fails because Defendants have not alleged a

---

[7] Because the court grants Simmons's motion to dismiss the slander of title claim due to lack of an actionable publication, it need not reach Simmons's remaining arguments regarding this claim.

willingness to tender the outstanding debt or provided an excuse to tender. To bring a claim to quiet title, plaintiffs must show they "are the rightful owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust." *Kelley v. Mortgage Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009). "In California it is well-settled that 'a mortgagor cannot quiet his title against the mortgagee without paying the debt secured.'" *Briosos v. Wells Fargo Bank*, 737 F. Supp. 2d 1018, 1032 (N.D. Cal. 2010) (quoting *Shimpones v. Stickney,* 219 Cal. 637, 649 (1934)). In response, Defendants argue that there are several exceptions to the tender requirement, and that three such exceptions apply here.

First, where "the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt." *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 112 (2011). Defendants assert that this exception applies since they are challenging the validity of the Deed of Trust. (Defs.' Opp'n 17.) However, Defendants do not challenge the validity of any of the Bonhomme loan documents or the loan itself; instead, they challenge the validity of the Deed of Trust, which is the instrument securing the debt. Tendering payment on the defaulted loan would not result in an affirmation of the Deed of Trust. Therefore, this exception does not apply.

Next, "a tender may not be required where it would be inequitable to impose such a condition on the party challenging the [foreclosure] sale." *Id*. at 113. In discussing this exception, the court in *Lona* relied on *Humboldt Savings Bank v. McCleverty*, 161 Cal. 285 (1911), in which a trustee sought to foreclose on two pieces of property secured by the same deed of trust for a debt of $57,618.30, with one parcel owned by the defendant's deceased husband (worth $57,000) and the other parcel consisting of the defendant's homestead interest (worth $5,000). *Id*. at 290-91. The court held that it would be inequitable to require the defendant to pay, or offer to pay, a debt of $57,000 to attack the sale of her $5,000 homestead where she was "in no way liable" for the debt and had no interest in the more expensive property. *Id*. at 291 ("Under the circumstances disclosed by this record, the defendant would be subjected to very evident injustice and hardship if her right to attack the sale were made dependent upon an offer by her to pay the whole debt. The debt was not hers, and she was not liable for any part of it."). Here, Defendants argue that "it

1  would be fundamentally unfair to force Koo to offer to pay the [Bonhomme] underlying debt,
2  when she is not liable for that debt (it is undisputed that Koo did not guaranty the [Bonhomme]
3  debt)." (Defs.' Opp'n 17.) However, although Koo did not personally guarantee the Bonhomme
4  debt, she is a member of Bonhomme, the entity that received the proceeds of the $3 million loan,
5  (MSJs Order 9), and is attempting to quiet title on the property used to secure the loan. The court
6  finds that the equitable exception to the tender requirement does not apply here.

7  Finally, "no tender will be required when the trustor is not required to rely on equity to
8  attack the deed because the trustee's deed is void on its face." *Id*. at 113. Here, Defendants allege
9  that the Deed of Trust is void. (*See* Defs.' Answers ¶ 51 ("The Deed of Trust was void from
10 inception, and is not merely voidable.").) However, notwithstanding Defendants' allegations, it is
11 undisputed that the Deed of Trust was executed by Lehman. (*See* MSJs Order 3, 5.) Therefore,
12 the Deed of Trust is voidable, not void. *See* Cal. Fam. Code § 1102(a) ("both spouses . . . must
13 join in executing any instrument by which . . . community real property or any interest therein is
14 leased for a longer period than one year, or is sold, conveyed, or encumbered."); *Clar v. Cacciola*,
15 193 Cal. App. 3d 1032, 1036 (1987) ("unauthorized gifts, sales or encumbrances of community
16 property are not void, but voidable, and this only at the instance of the other spouse or his or her
17 personal representative"). Accordingly, this exception does not apply.

18 In sum, as none of the claimed exceptions to the tender rule apply, the court finds that
19 Defendants' quiet title claim fails because they have not tendered or alleged a willingness to
20 tender the outstanding debt. *See Mix v. Sodd*, 126 Cal. App. 3d 386, 390 (1981) (noting that
21 mortgagor in possession may not maintain an action to quiet title without paying the debt, even if
22 the debt is otherwise unenforceable).

23 Defendants have one week from the date of this order to move to amend the complaint to
24 allege tender, or a willingness to tender on the outstanding Bonhomme loan debt. Given the
25 proximity of trial, any amended complaint must aver that full tender will take place by April 15,
26 2015.

27     **3.    Declaratory Judgment**
28 Finally, Simmons moves to dismiss Defendants' third counterclaim for declaratory

11

judgment pursuant to 28 U.S.C. § 2201.  The Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  "A declaratory judgment is not a theory of recovery . . . [§ 2201] "merely offers an *additional remedy* to litigants."  *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1111 (E.D. Cal. 2014) (citations and quotation marks omitted).  Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Bilbrey by Bilbrey v. Brown,* 738 F.2d 1462, 1470 (9th Cir. 1984).

Here, Simmons argues that declaratory relief is unwarranted because there are other adequate forms of relief available to Defendants; namely, Defendants have an adequate remedy at law via the ultimate determination of the validity of their remaining affirmative defenses.  The court agrees.  Defendants' sixteenth affirmative defense is forgery and illegality regarding the Deed of Trust, and their seventeenth affirmative defense is perjury and illegality regarding the Deed of Trust.  Neither of these affirmative defenses is the subject of Simmons's pending motion to strike (Docket No. 121), which is scheduled to be heard on April 15, 2015.  In both, Defendants assert that "Koo did not initial or execute the Deed of Trust, Lehman and Koo did not authorize anyone to initial or execute the Deed of Trust on Koo's behalf, and Lehman and Koo do not know who initialed and/or executed the Deed of Trust purportedly on Koo's behalf."  (Lehman Answer/Counterclaims ¶¶ 51, 52.[8])  Therefore, as the validity of the Deed of Trust will be determined by the factfinder in connection with Simmons's foreclosure claim, the declaratory judgment cause of action is unnecessary and thus dismissed.  *See Akhavein v. Argent Mortgage Co.*, No. 09-cv-00634 RMW (RS), 2009 WL 2157522, at *5 (N.D. Cal. July 18, 2009) ("A claim

---

[8] Koo's Answer/Counterclaims (apparently mistakenly) do not include a page 13 and therefore does not include the sixteenth affirmative defense and portions of the seventeenth affirmative defense.

12

for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action"; dismissing declaratory relief claim where the plaintiff borrowers sought "declaratory relief to resolve disputes arising from 'the rights and duties of the parties under the various statutes at issue in this litigation, the ownership to the Property, and/or right of foreclosure'").

## IV. Conclusion

For the foregoing reasons, Simmons's motion to dismiss is granted. Defendants' counterclaims are dismissed with prejudice. Defendants may move to amend the counterclaims by April 8, 2015, but only in conformity with this order. Given the proximity to trial, Defendants may not attempt to add new counterclaims or new theories to revive the dismissed counterclaims.

**IT IS SO ORDERED.**

Dated: April 1, 2015



Donna M. Ryu
United States Magistrate Judge